336 S.E.2d 910

**STATE of West Virginia**

v.

**Matthew Junior MILLER.**

No. 16583.

Supreme Court of Appeals of
West Virginia.

Nov. 8, 1985.

Terry D. Reed, Vicki H. Cowman, Hymes and Coontz, Buckhannon, for appellant.

State of W.Va. Atty. Gen. Office, Charleston, for appellee.

MILLER, Chief Justice:

Matthew Junior Miller was convicted by a jury in the Circuit Court of Upshur County of kidnapping and first degree sexual assault. He was sentenced to life with mercy for the kidnapping and to ten to twenty years for the sexual assault, with the sentences to be served concurrently. In his appeal, the defendant argues that it was a violation of double jeopardy principles for him to be convicted of both kidnapping and first degree sexual assault. He also contends, along with several other assignments of error, that the evidence was insufficient to support a conviction of first

degree sexual assault. We find that there was no reversible error and affirm his convictions.

The State's principal witnesses were the victim, who was eleven years old at the time of the incident, and her fifteen-year-old cousin. Both girls testified that on May 15, 1981, while walking in the town of Buckhannon, West Virginia, the defendant, who was thirty years old at the time, came up to them and asked if they would help him find his dog. The two girls agreed to help although neither one of them knew him. They got into his car and sat in the front seat. They were driven to several different locations and stopped on several occasions to search for the dog.

Subsequently, the defendant stopped at his house and asked the girls to enter and meet his son, but they refused. The defendant then attempted to tie a cord around the older girl's wrists purportedly to see if she could break it, but she managed to prevent him from doing this. He then tried to tie the cord around the victim's wrists, but she would not let him.

The older girl testified that following this incident, she and the victim got back into the car because the defendant indicated that he was going to take them home. Eventually, the defendant parked beside a baseball field, where the older girl left the car and refused to ride anymore with the defendant.

At this point, the defendant pulled out a steak knife, pointed it at the victim's stomach, and threatened to harm the victim if the older girl did not reenter the car. After the older girl refused, the defendant slammed the passenger door shut and drove off. As he drove, he ordered the victim to lie down in the front seat. The older girl ran to her grandmother's house, where the police were notified.

After traveling for some ten to fifteen minutes out of the town and onto a private road, the defendant and the victim got out of the car so that he could unlock the gate to a private camp where he sometimes worked. Once the car passed through the gate, the defendant locked the gate. Subsequently, the defendant drove the victim down the road until they were near a house located on the property.

The defendant then stepped out of the car, threw the knife away, and ordered the victim to disrobe while he disrobed as well. The victim testified that she was scared and complied with the defendant's demand. He then reentered the car and sexually assaulted the victim. When the assault was completed, the defendant drove the victim back into the town of Buckhannon and released her.

Following her release, the victim ran to her grandmother's house. After telling her grandmother what had transpired, she was taken to Saint Joseph's Hospital. The examining physician testified that he discovered some evidence of physical trauma inside the victim's genitalia.

At trial, the defendant presented an alibi defense and testified that he had never met the victim nor her cousin and denied any involvement in the crimes charged.

### I.

The defendant contends that under double jeopardy principles, he could not be convicted and punished for kidnapping and first degree sexual assault. He argues that since the kidnapping was necessarily a part of or incidental to the sexual assault, his convictions for both crimes constitute multiple punishments for the same offense in violation of the Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution. We disagree.

We have recently addressed this double jeopardy question in the context of a case that is factually similar to the present one. In *State v. Trail*, 174 W.Va. 656, 328 S.E.2d 671 (1985), the defendant met two teenagers in the woods and helped them make a fire. After disabling one of the teenagers, the defendant forced the other teenager to walk approximately three miles to another section of the woods where he sexually assaulted her. He was convicted of abduction, W.Va.Code, 61–2–14, and sec-

ond degree sexual assault, W.Va.Code, 61–8B–4.

In concluding that there was no double jeopardy violation, we applied the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which is summarized in Syllabus Point 8 of *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983):

> "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

Thus, from a purely double jeopardy standpoint, where two statutes are involved, the *Blockburger* test provides the analytical framework. In Syllabus Point 2 of *Gilkerson v. Lilly*, 169 W.Va. 412, 288 S.E.2d 164 (1982), we made it clear that we had abandoned the same transaction test as articulated in *State ex rel. Dowdy v. Robinson*, 163 W.Va. 154, 257 S.E.2d 167 (1979), *overruled on other grounds, State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720 (1982), for double jeopardy purposes and that it existed only as a procedural joinder rule: "The same transaction test for double jeopardy purposes is a procedural rule that is not mandated by either the State or federal constitutions but is in furtherance of the general policy enunciated in the double jeopardy clauses." *See also State ex rel. Watson v. Ferguson*, 166 W.Va. 337, 274 S.E.2d 440 (1980).

A strict application of the *Blockburger* test in the present case is not entirely helpful because of the broad language used in our kidnapping statute. A cursory reading of our kidnapping statute, W.Va.Code, 61–2–14a,[1] which does not require proof of sexual intercourse, and our first degree sexual assault statute, W.Va.Code, 61–8B–3 (1976),[2] which does not require proof of confinement or movement, suggests that these are two distinct offenses for double jeopardy purposes. Each requires proof of an element that is not common to both crimes.

However, it is conceivable that situations may arise where the kidnapping is a part of or incidental to the commission of another crime. The defendant cites *People v. Levy*, 15 N.Y.2d 159, 164, 204 N.E.2d 842, 844, 256 N.Y.S.2d 793, 796, *cert. denied*, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965), where New York's highest court, in interpreting a similar broadly worded kidnapping statute, identified the problem in these terms:

> "This definition [of kidnapping] could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping and abduction. It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound

1. The pertinent part of W.Va.Code, 61–2–14a, without the penalty provisions, is:

   "If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony...."

2. Since the sexual assault occurred in 1981, W.Va.Code, 61–8B–3 (1976), which was amend-

ed in 1984, is applicable. W.Va.Code, 61–8B–3 (1976), provides in part:

   "(a) A person is guilty of sexual assault in the first degree when:
   (1) He engages in sexual intercourse with another person by forcible compulsion; and
   (i) He inflicts serious bodily injury upon anyone; or
   (ii) He employed a deadly weapon in commission of the crime; or
   (iii) The victim was not a voluntary social companion of the actor on the occasion of the crime; or
   (2) He engages in sexual intercourse with another person who is incapable of consent because he is physically helpless; or
   (3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old."

and detained, or moved into and left in another room or place.

"It is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words."

See generally Annot., 43 A.L.R.3d 699 (1972).

The defendant argues that under the facts of this case, the kidnapping was only incidental to the sexual assault and that we should narrowly construe our kidnapping statute. We have not had occasion to consider this precise issue before.

At common law, kidnapping was a misdemeanor and was defined as "the forcible abduction or stealing away of a man, woman, or child, from their own country and sending them into another." 4 W. Blackstone, Commentaries *219.

From the formation of this State until 1933, we did not have a general kidnapping statute. We utilized two Virginia statutes which dealt with the abduction of a female and the kidnapping of a child.[3] It was not until the kidnapping of Charles Lindbergh's child in 1932 [4] that many states, including West Virginia, enacted broader kidnapping statutes with more severe penalties patterned in some degree after the federal kidnapping act, 18 U.S.C. § 1201.[5] Generally, these statutes expanded the scope of kidnapping to include almost any forced movement or detention within the State.

Courts as well as commentators eventually recognized that kidnapping technically could be committed by the slightest degree of forcible movement or detention. Thus, these statutes made it possible for a person charged with committing a robbery or a sexual assault to additionally be charged with kidnapping, even though the kidnapping was entirely incidental to the ultimate crime. In addressing this problem, the New Jersey Supreme Court in State v. Masino, 94 N.J. 436, 441, 466 A.2d 955, 957–58 (1983), observed:

"The elimination of the requirement that the victim be moved a fixed distance gave rise to such highly questionable re-

**3.** The Virginia statutes were combined to form one statute, W.Va.Code, 61–2–14 (1923), which stated:

"If any person take away, or detain against her will, a female person, with intent to marry or defile her, or to cause her to be married or defiled by another person; or take away from any person having lawful charge of her a female child under the age of sixteen years, for the purpose of prostitution or concubinage; *or if any person seize, take or secrete a child under the age of sixteen years from the person having lawful charge of such child, with intent to extort money or other pecuniary benefit,* he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than three nor more than ten years. And if any person, other than the father or mother, illegally, or for any unlawful, improper or immoral purpose, * seize, take or secrete a child under sixteen years of age, from the person or persons having lawful charge of such child, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than five years, or, in the discretion of the court, be confined in jail not exceeding one year and be fined not exceeding one thousand dollars." (Emphasis and asterisk added).

At the time of the adoption of our kidnapping statute, W.Va.Code, 61–2–14a, in 1933, the emphasized portion quoted above was dropped from W.Va.Code, 61–2–14, and this phrase was added after the asterisk: "other than the purposes stated in section fourteen-(a) of this article." In 1984, W.Va.Code, 61–2–14, was rewritten and divided into an (a) and (b) part to reflect the crimes of abduction of any person for marriage or other sexual purpose in (a) and the abduction of a child for any unlawful, improper or immoral purpose in (b).

**4.** The commentary to § 212.1 of the Model Penal Code (1980) contains an excellent summary of the history of kidnapping law in this country. It notes that federal kidnapping legislation had been introduced in 1931 prior to the Lindbergh kidnapping. At the time of the Lindbergh kidnapping in New Jersey, this offense was only a misdemeanor.

**5.** In the only kidnapping case in which we analyzed W.Va.Code, 61–2–14a, in any detail, Pyles v. Boles, 148 W.Va. 465, 135 S.E.2d 692, cert. denied, 379 U.S. 864, 85 S.Ct. 130, 13 L.Ed.2d 67 (1964), we were concerned primarily with the sufficiency of the indictment and referred to several decisions rendered under the federal act.

sults as convictions for kidnapping when the victim was forced to move from room to room as a robber ransacked his house....

"This approach rendered the asportation requirement meaningless. Worse, it meant that kidnapping's harsh sentence, even when the movement constituting the 'kidnapping' was simply incidental to the underlying crime of rape or robbery, was available to state public outcry or prosecutorial zeal. The potential for abusive prosecution became evident."

A majority of jurisdictions have concluded that in interpreting and applying a generally worded kidnapping statute, such as W.Va.Code, 61–2–14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed. These courts are not in complete agreement as to what standards should be applied in determining whether a kidnapping was committed in addition to another crime. The diversity of opinions in this area of the law is a reflection of the wide variety of factual situations courts have encountered.

It does appear that some general standards have been formulated to determine whether a kidnapping charge is appropriate. Most courts have concluded that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kidnapping were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm.[6] *See, e.g., People v. Daniels,* 71 Cal.2d 1119, 459 P.2d 225, 80 Cal.Rptr. 897, 43 A.L.R.3d 677 (1969); *Tyre v. State,* 412 A.2d 326 (Del. 1980); *Robinson v. United States,* 388 A.2d 1210 (D.C.1978); *Mobley v. State,* 409 So.2d 1031 (Fla.1982); *State v. Mead,* 318 N.W.2d 440 (Iowa 1982); *State v. Cabral,* 228 Kan. 741, 619 P.2d 1163 (1980); *State v. Estes,* 418 A.2d 1108 (Me.1980); *People v. Adams,* 389 Mich. 222, 205 N.W.2d 415, 59 A.L.R.3d 1288 (1973); *State v. McEwan,* 265 N.W.2d 818 (Minn.1978); *Cuevas v. State,* 338 So.2d 1236 (Miss.1976); *Wright v. State,* 94 Nev. 415, 581 P.2d 442 (1978); *State v. Masino, supra; People v. Levy, supra; State v. Fulcher,* 294 N.C. 503, 243 S.E.2d 338 (1978); *State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979); *State v. Garcia,* 288 Or. 413, 605 P.2d 671 (1980); *State v. Innis,* 433 A.2d 646 (R.I.1981), *cert. denied,* 456 U.S. 942, 102 S.Ct. 2005, 72 L.Ed.2d 464 (1982); *State v. Curtis,* 298 N.W.2d 807 (S.D.1980).[7]

---

**6.** Most if not all courts recognize that where there is a "traditional" kidnapping involving either a ransom demand or the detention of a victim as a hostage to prevent capture or arrest, and the victim has in addition been sexually abused, robbed, or killed, there is no question that a prosecution for these separate crimes may be maintained. *E.g., Mobley v. State,* 409 So.2d 1031 (Fla.1982); *People v. Adams,* 389 Mich. 222, 205 N.W.2d 415, 59 A.L.R.3d 1288 (1973); *People v. Levy, supra; State v. Innis,* 433 A.2d 646 (R.I.1981), *cert. denied,* 456 U.S. 942, 102 S.Ct. 2005, 72 L.Ed.2d 464 (1982).

**7.** Several states have attempted to clarify their kidnapping statutes by using the language of § 212.1 of the Model Penal Code (1980), which states in part:

"A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:

(a) to hold for ransom or reward, or as a shield or hostage; or

(b) to facilitate commission of any felony or flight thereafter; or

(c) to inflict bodily injury on or to terrorize the victim or another; or

(d) to interfere with the performance of any governmental or political function."

In the commentary to the Model Penal Code § 212.1 at 223 (1980), the following explanation is given in support of the language adopted in § 212.1:

"The rationale is twofold: first, to punish conduct that effects substantial isolation of the victim from the protection of the law; but, second, to confine the offense to instances where the degree of removal or the duration of confinement coupled with the purpose of the kidnapper render the conduct especially terrifying and dangerous."

The Model Penal Code also has sections for less serious forms of restraint: § 212.2 for felonious restraint and § 212.3 for false imprisonment.

■ In applying the foregoing principles to the present case, we conclude that the kidnapping here was not merely incidental to the sexual assault. From the time the victim had been inveigled into the defendant's car supposedly to look for his dog to the time the defendant released her, she had been in his control for approximately one and one-half hours. Although the victim may not have been aware of any danger initially, it soon became apparent when the defendant attempted to tie some cord around the wrists of herself and her cousin. Thereafter the defendant threatened to hurt the victim with a steak knife and drove off when the cousin refused to reenter the car. For ten to fifteen minutes, the victim was forced to lie down in the front seat of the car under the threat of the defendant's knife.

It is difficult to ascertain how many miles the victim was forced to travel with the defendant. From the testimony of the victim and her cousin, it is apparent that the distance was not inconsequential. The location of the place where the sexual assault occurred was isolated and unfamiliar to the victim. She was on private property behind a locked gate which lessened the possibility of the defendant being discovered or of her escaping. In this situation, clearly the victim was exposed to an increased risk of harm. In many respects, this case is analogous to our decision in *Trail*, where the victim had been forced by the defendant to walk three miles into a more isolated area of the woods and then was sexually assaulted.[8]

In light of these facts, we conclude that the double jeopardy rights of the defendant were not violated in convicting him of kidnapping and first degree sexual assault. Furthermore, the kidnapping was not merely incidental to the sexual assault charge.

**II.**

The defendant's second assignment of error is that the evidence was insufficient to support the first degree sexual assault conviction because there was no proof that a deadly weapon had been used in the assault. The victim testified that just prior to the sexual assault, the defendant had thrown the steak knife away and then returned to the car to sexually assault her. There was no evidence that any other deadly weapon was involved. Thus, the defendant argues that under these facts, the State failed to establish that a first degree sexual assault had been committed. In addressing this issue, we must examine the provisions of W.Va.Code, 61–8B–3 (1976).

W.Va.Code, 61–8B–3 (1976), provides that first degree sexual assault occurs when the defendant engages in sexual intercourse by forcible compulsion and "(i) [h]e inflicts serious bodily injury upon anyone; or (ii) [h]e employed a deadly weapon in commission of the crime; or (iii) [t]he victim was not a voluntary social companion of the actor on the occasion of the crime."

The defendant initially argues that the victim was a voluntary social companion and therefore the use of a deadly weapon or the infliction of serious bodily injury must be shown. We do not agree as the victim was not a voluntary social companion.

We have not had occasion to discuss the meaning of the term "voluntary social companion." In *State v. Wyer*, 173 W.Va. 720, 320 S.E.2d 92 (1984), we noted that only three other states—Delaware, Hawaii, and Maine—utilized the term "voluntary social companion" in their sexual offense statutes.[9] Of these other jurisdictions where the term is used, only Delaware has

---

**8.** Although not raised by the defendant, the overlap between our kidnapping and sexual offense statutes is more apparent when there is no separate "ransom, money or other thing, or any concession or advantage of any sort." W.Va. Code, 61–2–14(a). Most courts that have considered this point under kidnapping statutes similar to ours have held that sexual gratification is a sufficient "concession or advantage" or "thing of value" to satisfy the kidnapping stat-

ute. *See, e.g., State v. Dubina,* 164 Conn. 95, 318 A.2d 95 (1972); *State v. Knutson,* 220 N.W.2d 575 (Iowa 1974); *State v. Sonnier,* 402 So.2d 650 (La.1981), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); *Householder v. Ramey,* 485 P.2d 247 (Okla.Crim.App.1971).

**9.** In the 1984 revision to our first degree sexual assault statute, W.Va.Code, 61–8B–3, this term was deleted.

touched on the issue. In *Bright v. Delaware*, 490 A.2d 564 (Del.1985), the court concluded, not surprisingly, that where a stranger forcibly abducts a victim and then sexually assaults her, such person is not a voluntary social companion.

In this case, we conclude that merely because the victim was induced to get in the car under the guise of helping the defendant find his dog did not make her a voluntary social companion. Furthermore, once the ruse of looking for the defendant's dog ended, her status could not be termed voluntary. The defendant attempted to tie a cord around the wrists of both the victim and her cousin. Subsequently, he threatened the victim with the steak knife and forced her to lie down in the front seat of his car while he drove to the remote location where the sexual assault occurred.

In *Wyer*, we held in Syllabus Point 2, in part, that where a victim was not a voluntary social companion, the State need only prove that fact and that the victim was subjected to sexual intercourse by forcible compulsion:

"Where the victim is a nonvoluntary social companion, the State need prove only that fact and that she was subjected to sexual intercourse by forcible compulsion."[10]

The term "forcible compulsion" is defined in W.Va.Code, 61–8B–1(1) (1976), and means "[p]hysical force that overcomes such earnest resistance as might reasonably be expected under the circumstances"

or "[t]hreat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury."[11] The circumstances that may be considered include acts of violence or other misconduct committed by the defendant that would be relevant in establishing the victim's fear of his attacker. We held in Syllabus Point 4 of *State v. Pancake*, 170 W.Va. 690, 296 S.E.2d 37 (1982): "Evidence that a defendant committed violent or turbulent acts toward a rape victim or toward others of which she is aware, is relevant to establish her fear of her attacker that is a major element of proof of first-degree sexual assault. W.Va.Code, 61–8B–1(1)(b)."

We discussed the term "forcible compulsion" recently in *State v. Hartshorn*, 274 W.Va. 175, 332 S.E.2d 574 (1985), which involved a voluntary social companion. The assault occurred at night in a dwelling house where a married couple were asleep in an adjacent room and some nine feet away from where the assault occurred and there was no door between the rooms. The married couple denied hearing any noise and we concluded in Syllabus Point 1 that: "Where evidence conclusively establishes that the victim of a sexual assault offered no resistance to his attacker, was neither struck dumb with fear during the assault, nor attempted to utter any plea for assistance, no 'earnest resistance' to 'forcible compulsion' exists under *W.Va.Code* 61–8B–1(1)(a) [1976]."

In the present case, the remote area where the assault occurred suggests the

---

**10.** The entire text of Syllabus Point 2 of *Wyer* is:

"The legislature, by enactment of W.Va. Code, 61–8B–3(a)(1) (1976), relating to sexual assault in the first degree, created a distinction between a voluntary and a nonvoluntary social companion with regard to the elements of the crime of sexual assault in the first degree. Where the victim is a nonvoluntary social companion, the State need prove only that fact and that she was subjected to sexual intercourse by forcible compulsion. Where a voluntary social companion is involved, the State must in addition show either (1) the infliction of serious bodily injury on anyone or (2) the employment of a deadly weapon in the commission of the crime. Finally, where a voluntary social companion is involved and there is sexual intercourse by forcible compul-

sion but without either of the foregoing aggravating circumstances, the crime is then sexual assault in the second degree under W.Va. Code, 61–8B–4 (1976)."

**11.** The text of W.Va.Code, 61–8B–1(1) (1976), is:

"(1) 'Forcible compulsion' means:

"(a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

"(b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped.

"For the purposes of this definition 'resistance' includes physical resistance or any clear communication of the victim's lack of consent."

futility if not the danger of the victim making any outcry. Certainly, the defendant's age contrasted with the immaturity of the victim is a significant factor in determining the degree of earnest resistance that might be expected.[12] Finally, preceding the assault, the defendant had threatened the victim with a deadly weapon and had kidnapped her.

Other courts have considered a variety of factors in judging whether the victim offered earnest resistance. One of the best discussions is found in *State v. Lima*, 64 Hawaii 470, 643 P.2d 536 (1982), where the victim was offered a ride home by the defendant, whom she knew slightly. Instead of driving her directly home, he asked her to help him obtain some marijuana plants in a wooded area which she agreed to do. After leading her about three hundred yards into the woods, the defendant told her to sit down and proceeded to fondle her. She asked him to stop and tried to push him off but he proceeded to have sexual intercourse with her. She was fourteen years old and he was an adult male.

The Supreme Court of Hawaii in affirming the conviction listed the following factors as being relevant to the issue of forcible compulsion:

> "[Earnest resistance] does not mean, however, that the complainant must resist to the utmost extent possible. We long ago rejected that view. *See State v. Dizon*, 47 Haw. 444, 390 P.2d 759 (1964). Instead, we believe a complainant must only exhibit a genuine physical effort to resist as judged by the circumstances of the particular case. Among the factors to be considered are the relative strength of the parties, the age of the complainant, the complainant's mental and physi-

cal condition, and the nature and degree of the force used by the assailant. *State v. Jones*, [62 Haw. 572, 574, 617 P.2d 1214, 1217 (1980)]. We note these factors are not all inclusive. Rather, in our review of this issue, we must necessarily consider all relevant facts concerning the alleged attack." 64 Hawaii at 476–77, 643 P.2d at 540. (Footnote omitted).

*See also Johnston v. State*, 673 P.2d 844 (Okla.Crim.App.1983), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2682, 81 L.Ed.2d 877 (1984); *State v. Carvalho*, 122 R.I. 461, 409 A.2d 132 (1979); *State v. Studham*, 572 P.2d 700 (Utah 1977); *Lhost v. State*, 85 Wis.2d 620, 271 N.W.2d 121 (1978); *Evans v. State*, 655 P.2d 1214 (Wyo.1982).

We conclude that in determining whether the victim of a sexual assault exercised "earnest resistance" as defined in W.Va.Code, 61–8B–1(1) (1976), the following factors should be considered: the age and mental and physical conditions of the complainant as well as those of the defendant, together with the circumstances leading up to and surrounding the assault.

Upon the facts of this case, we cannot find as a matter of law that the victim failed to exercise earnest resistance.

### III.

#### A.

The remaining assignments of error may be addressed in a more abbreviated fashion. The defendant contends that under the Sixth Amendment of the United States Constitution, he and his counsel had the right to be present at and participate in the grand jury proceedings which resulted in his two-count indictment.[13] We have not

---

**12.** Statutory recognition of the age disparity also is noted. In the 1984 amendment to the first degree sexual assault statute, W.Va.Code, 61–8B–3(a)(2), the crime is complete if a defendant who is "fourteen years old or more" engages in sexual intercourse with another person who is "eleven years old or less." At the time of the crime in this case, the statutory language was "less than eleven years old." As previously pointed out, the victim was eleven years old. The age factor was also recognized in our prior

law when the crime of statutory rape applied to females under sixteen years of age. W.Va.Code, 61–2–15 (1931).

**13.** In the present case, the defendant was not subpoenaed to testify before the grand jury which indicted him. Therefore, we do not need to address the issue of what rights the target of a grand jury investigation has when he is subpoenaed to testify before the grand jury. *See, e.g., United States v. Scrimgeour*, 636 F.2d 1019 (5th Cir.1981); *In Re Caito*, 459 N.E.2d 1179

found nor have we been cited any decision by any court upholding such a right. The courts that have considered this issue have generally held, without any extended discussions, that a putative defendant and his counsel have no constitutional right to be present at and participate in grand jury proceedings.

The United States Supreme Court by way of dictum in *In re Groban*, 352 U.S. 330, 333, 77 S.Ct. 510, 513, 1 L.Ed.2d 376, 380 (1957), citing several lower federal court cases, stated that "[a] witness before a grand jury cannot insist, as a matter of constitutional right, on being represented by his counsel." (Footnote omitted). In *United States v. Dionisio*, 410 U.S. 1, 16–17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67, 81 (1973), after referring to the historic mission of the grand jury "to clear the innocent, no less than to bring to trial those who may be guilty," the United States Supreme Court concluded: "Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal law...." (Footnote and citations omitted). *See also, United States v. Smith*, 552 F.2d 257 (8th Cir.1977); *United States v. Leverage Funding Systems, Inc.*, 637 F.2d 645 (9th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981); *United States v. Crowhurst*, 629 F.2d 1297 (9th Cir.), *cert. denied*, 449 U.S. 1021, 101 S.Ct. 587, 66 L.Ed.2d 482 (1980); *United States v. Pabian*, 704 F.2d 1533 (11th Cir.1983); *Hawkins v. Superior Court*, 22 Cal.3d 584, 586 P.2d 916, 150 Cal.Rptr. 435 (1978); *State v. Piskorski*, 177 Conn. 677, 419 A.2d 866, *cert. denied*, 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979); *People v. Creque*, 72 Ill.2d 515, 22 Ill.Dec. 403, 382 N.E.2d 793 (1978), *cert. denied*, 441 U.S. 912, 99 S.Ct. 2010, 60 L.Ed.2d 384 (1979); *Van Horn v. City of Trenton*, 80 N.J. 528, 404 A.2d 615 (1979).

In light of the foregoing authority, we reject the defendant's assertion that he and his counsel had the right to appear before the grand jury which indicted him.

(Ind.), *cert. denied*, 469 U.S. 805, 105 S.Ct. 62, 83 L.Ed.2d 13 (1984); *State v. Vinegra*, 73 N.J. 484,

### B.

■ The defendant challenges the sufficiency of the indictment. He contends that the indictment fails to allege criminal intent and fails to describe with sufficient detail the acts of which he was being charged. The two counts in the indictment generally track the language of the statutes involved. Our well established rule on the sufficiency of the language in an indictment is stated in Syllabus Point 3 of *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983):

"An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based."

*See also State v. Manns*, 174 W.Va. 793, 799, 329 S.E.2d 865, 872 (1985); Syllabus Point 3, *State ex rel. Whitman v. Fox*, 160 W.Va. 633, 236 S.E.2d 565 (1977); Syllabus Point 1, *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476 (1976); Syllabus Point 1, *State ex rel. Combs v. Boles*, 151 W.Va. 194, 151 S.E.2d 115 (1966).

In applying this rule to the present case, we conclude that the two counts in the indictment were sufficient to inform the defendant that he was charged with kidnapping under W.Va.Code, 61–2–14a, and first degree sexual assault under W.Va. Code, 61–8B–3 (1976). We note that a similar indictment for kidnapping was upheld in *Pyles v. Boles*, 148 W.Va. 465, 135 S.E.2d 692, *cert. denied*, 379 U.S. 864, 85 S.Ct. 130, 13 L.Ed.2d 67 (1964), and that a less detailed indictment for first degree sexual assault was upheld in *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234, 31 A.L.R.4th 103 (1981).

### C.

■ The defendant contends that the trial court refused to require the State in response to the defendant's discovery mo-

376 A.2d 150 (1977); *State v. Cook*, 11 Ohio App.3d 237, 464 N.E.2d 577 (1983).

tion to give to the defendant certain police reports containing statements made by the victim and her cousin. Under Rule 16(a)(2) of the West Virginia Rules of Criminal Procedure, "reports, memoranda, or other internal official documents made by the attorney for the State or other state officials in connection with the investigation or prosecution of the case, or of statements made by State witnesses or prospective State witnesses" are not discoverable prior to trial "except as provided in Rule 26.2." In *State v. Audia*, 171 W.Va. 568, 578 n. 12, 301 S.E.2d 199, 210 n. 12, *cert. denied*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983), we observed that Rule 16(a)(2) "protects police reports from disclosure during discovery."

Rule 26.2, which parallels the federal rule, is discussed at some length in *State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603 (1984). In *Watson*, we explained that under Rule 26.2, once a State's witness has testified, the defendant has the right to obtain a copy of any statements made by that witness and we quoted from 2 C. Wright, Federal Practice & Procedure § 438 at 598 (2d ed.1982): "Rule 26.2, like the statute it has replaced, creates no right to production of statements of witnesses until the witness has testified on direct examination."

The defendant did not make a motion under Rule 26.2 following the direct examination of the victim by requesting a copy of any previous statements she had made prior to testifying in court. Since he did not avail himself of this procedure, we find no error committed.[14]

■ As to the cousin's statement, by the time she testified, her written statement had already been read into evidence. This statement came into evidence because the defendant in cross-examining the investigating officer asked him about the statement. The State, in its redirect examination, had the officer read to the jury the statement he had taken to corroborate his previous testimony. Consequently, the defendant did have the benefit of the statement.

### D.

The defendant argues that the State had ordered prospective State witnesses to refuse to cooperate with the defendant's investigator and to speak only with the defendant's counsel or his investigator in the presence of a State's attorney.[15] The State denied this allegation in a pretrial hearing and stated on the record that the defendant's counsel had full access to any State witnesses. The defendant did not at any time after this hearing advise the court that he was denied access to the State's witnesses. We, therefore, find no error on this point.

### E.

Four of the defendant's assignments of error involve the trial court's rulings on evidentiary matters. These alleged errors are controlled by Syllabus Point 2 of *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983):

"'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983)."

*See also* Syllabus Point 3, *State v. Louk, supra;* Syllabus Point 2, *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981); Syl-

---

**14.** No contention is made that the victim's statement contained exculpatory material which would have been required to be produced by the State under *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See* 1 F. Cleckley, Handbook on West Virginia Criminal Procedure 549 (1985).

**15.** We spoke to a related point in Syllabus Point 3 of *State v. Harr*, 156 W.Va. 492, 194 S.E.2d 652 (1973), where we said:

"Where it appears that the prosecuting attorney has advised the state's witnesses to refrain from talking to counsel for the defense, a motion requesting the court to compel such witnesses to hold themselves available for such purpose should be granted since the denial of such motion may effectively frustrate the preparation of a proper defense and thereby deprive the defendant of a fair trial."

*See also* Annot., 14 A.L.R.3d 652 (1967).

labus Point 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955).

The defendant asked the victim a number of questions designed to reveal whether she thought her assailant was right- or left-handed. The victim denied remembering or noting which hand her assailant appeared to favor. When the defendant continued pursuing this line of questioning, the State objected and the court sustained the objection because the victim had already indicated she did not know which hand was favored. A trial court on objection has the right to prevent further inquiry of a witness when he has previously indicated a lack of knowledge of the subject matter of the question.

The trial court refused on the ground of relevancy to allow the defendant in his testimony to state the size of his sex organ, which the defendant alleges was an attempt to rebut previous testimony given by the victim. This issue was entirely collateral to the elements of the sexual assault charge.

An objection by the State was sustained when the defendant asked the investigating officer if he simply accepted the word of a complainant or if he investigated the allegations made by a complainant. The question was argumentative and properly rejected.

The defendant also contends that the State should not have been allowed to cross-examine one of the defendant's witnesses on two prior felony convictions he had in 1962 and 1967. This trial occurred prior to the adoption of Rule 609 of the West Virginia Rules of Evidence which

places limitations on the use of prior convictions to impeach witnesses.[16] Our then existing law as to the use of prior convictions to impeach a witness, other than a criminal defendant, is contained in Syllabus Point 3 of *State v. Woods,* 155 W.Va. 344, 184 S.E.2d 130 (1971): "Questions may be asked of witnesses as to convictions, both felonies and misdemeanors, in order to test the witness' credibility." *See also State v. Gum,* 172 W.Va. 534, 544, 309 S.E.2d 32, 42 (1983).

Finally, the defendant contends that the State failed to disclose during discovery that it planned to introduce the steak knife and several photographs into evidence. The knife was listed in several reports supplied by the State to the defendant, so he should have been aware that it existed and that tests had been performed upon it. The trial court ruled that there was nothing in the photographs that could be prejudicial to the defendant, particularly since the jury had been to the area pictured in the photographs. We find no error on this point.[17]

For the foregoing reasons, we conclude that the defendant's convictions of kidnapping and first degree sexual assault in the Circuit Court of Upshur County are affirmed.

Affirmed.

---

16. The West Virginia Rules of Evidence became effective February 1, 1985 and Rule 609 provides in relevant part:

"(2) All Witnesses Other than Criminal Defendants.—For the purpose of attacking the credibility of any witness, other than a witness accused in a criminal case, evidence that he has been convicted of a crime shall be admitted if elicited from him during cross-examination or established by public record but only if

(A) the crime was punishable by imprisonment in excess of one year under the law under which he was convicted and the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect to the parties and embarrassment to the witness or

(B) the crime involved dishonesty or false statement, regardless of the punishment.

"(b) *Time Limit.*—Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction...."

17. The defendant argues that the trial court erred in refusing to give half of his tendered instructions. We have examined these instructions and conclude that they were either repetitive or contained inaccurate statements of the law which under our cases, the court was not required to give. *State v. Louk,* 171 W.Va. 639, 301 S.E.2d 596 (1983); *State v. McCormick,* 166 W.Va. 800, 277 S.E.2d 629 (1981).