# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2013 Term

_____

No. 12-0301

_____

STATE OF WEST VIRGINIA,
Respondent

V.

BRYAN MAGGARD,
Petitioner

**FILED**

**October 7, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

**Appeal from the Circuit Court of Cabell County**
**Honorable Alfred E. Ferguson, Judge**
**Case No.: 10-F-121**

**REVERSED AND REMANDED**
_____

Submitted: September 10, 2013
Filed: October 7, 2013

Richard W. Weston, Esq.                Patrick Morrisey, Attorney General
Connor D. Robertson, Esq.              Scott E. Johnson, Senior Assistant
Weston Law Office                      Christopher S. Dodrill
Huntington, West Virginia              Assistant Attorney General
Attorney for Petitioner                Charleston, West Virginia
                                       Attorneys for Respondent

The Opinion of the Court was delivered PER CURIAM.

JUSTICE WORKMAN and JUSTICE LOUGHRY dissent and reserve the right to file dissenting opinions.

**SYLLABUS BY THE COURT**

1. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

2. ""Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983).' Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983)." Syllabus Point 7, *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985).

**PER CURIAM:**

The instant case is before the Court upon the appeal of Bryan Maggard, Petitioner, from a conviction for one count of second degree sexual assault. Petitioner alleges the following assignments of error: 1) the circuit court erred by allowing the State to question the alleged victim regarding the Petitioner's sexual history and portraying him as a sexual predator; 2) the circuit court erred by excluding the alleged victim's Twitter statement under the Rape Shield Law; 3) the circuit court erred by refusing to strike three different jurors for cause; 4) the State presented insufficient evidence to sustain a conviction on Count One, sexual assault in the second degree; and 5) the jury reached a compromise verdict that was not based on the evidence at trial. Upon reviewing the petition, the response, the submitted appendix, and the arguments of counsel, this Court concludes that, for the reasons set forth more fully below, the circuit court committed error and therefore, the case must be reversed and remanded for a new trial.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2008, Petitioner Bryan Maggard logged into Facebook and saw a "friend request" from a female named J.C.[1] He accepted her friend request and the two began chatting via Facebook and then began text messaging one another.

---

[1] Pursuant to Rule 40(e) of the West Virginia Rules of Appellate Procedure, we will refer to the alleged victim by her initials.

1

Approximately a week later, Maggard and J.C. decided to meet in person. On the night of September 27, 2008, J.C., who worked at a Huntington nightclub, ended her shift at approximately 3:30 a.m. Maggard met J.C. outside the club following her shift and she drove him to the "Marshall Rugby House" where he lived. When the pair got to Maggard's home, he asked her if she would come in to watch a movie.

Upon entering the rugby house, Maggard and J.C. went to his bedroom. J.C. sat down in a chair and watched Maggard turn on the television; light candles; remove his shirt, pants, and shoes; and climb into bed. J.C. alleges that she told Maggard that "nothing sexual was going to happen." Maggard then pulled J.C. by the hand from the chair to the bed. While the two were kissing, Maggard rubbed J.C.'s crotch over her shorts. J.C. alleges that she repeatedly told Maggard "no" and pushed his hand away multiple times. Maggard conversely alleges that J.C. never told him "no." Maggard digitally penetrated J.C.'s vagina and thereafter, the two engaged in sexual intercourse. J.C. alleges that she repeatedly tried to push Maggard away by pushing against his hips but that he forced his penis into her vagina while holding her arms down. J.C. alleges that she repeatedly said, "no." Conversely, Maggard alleges that J.C. never told him "no," and that the two consensually engaged in sexual intercourse in different positions.

Thereafter, Maggard went to the bathroom and then returned to his bedroom. Maggard got back into the bed and asked J.C. to spend the night. She laid on the bed with

2

Maggard and he fell asleep. At some point thereafter, she left the house and started to drive to her home in Ohio. During the drive, she pulled over her car and called a friend to take her to the hospital. J.C.'s friend, Krisha, took her to Cabell Huntington hospital. Krisha then called her friend, Huntington Police Officer Todd Veazey, who met them at the hospital.

At the hospital, J.C. was examined by registered nurse Stacie King who performed a rape kit. J.C. was visibly upset and crying. She gave a statement to Officer Veazey. Detective Rodney Pell, who was thereafter assigned the case, reviewed J.C.'s statement with her and took a statement from Maggard. On March 16, 2010, Maggard was indicted on two counts of sexual abuse in the second degree (sexual intrusion without consent) pursuant to West Virginia Code § 61-8B-4(a)(1) (1991). Count One charged digital penetration. Count Two charged penile penetration. The case went to trial on April 5-6, 2011. The jury convicted Maggard on Count One (digital penetration) but acquitted him on Count Two (penile penetration). On January 30, 2012, the circuit court sentenced Maggard to ten to twenty-five years in prison, but suspended the sentence, placed him on probation for five years, and required him to register as a sex offender for life.

3

## II.

## STANDARD OF REVIEW

As it pertains to the applicable standard of review in this case, this Court has consistently held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). ""'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983).' Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983)." Syl. Pt. 7, *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985).

With this standard in mind, we proceed to consider the merits of Maggard's appeal.

## III.

## DISCUSSION

In his first assignment of error, Maggard alleges that the circuit court erred by allowing the State to question the victim regarding his sexual history and portraying him as a sexual predator. On direct examination at trial, the State asked J.C. why she did not want to go into Maggard's house when he kept persistently asking her to accompany him

4

into the residence. J.C. answered, "I heard how he is." The defense objected and said "'Heard how he is' is completely outside the scope of what is going on here." The circuit court responded "I will let her answer that." The State then asked, "and you said you knew?" J.C. replied, "Yes. And how he was that he just wants to be with – he just wants to get one thing from girls." Importantly, the State repeated J.C.'s answers twice during its closing argument. The first time, the State represented in closing,

> "[s]o she knows what he is like and she is not wanting to have sex at that time with him. That's her decision to make and she says, 'Look, I made this agreement with him. I am not going to have sex with him and I told him that.'"

The second time the State mentioned J.C.'s comments in closing, the State represented that "[t]hat's why [J.C.] made that agreement with him. You heard what [J.C.] said. 'I had heard what he was like. I mean, I had heard these things about him.'"

Maggard argues that these statements are improper 404(a) character evidence, as they portray him as a sexual predator and suggest to the jury that J.C. was "just next in line."[2] Additionally, Maggard asserts that the testimony could also be characterized as improper 404(b) testimony for which no pretrial notice or findings were made because, while it was not clear if J.C. was referring to character evidence or specific

---

2 Rule 404(a) of the West Virginia Rules of Evidence states that "evidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion."

instances of conduct, her remarks were prejudicial.[3]  Maggard avers that he never placed

his character in evidence at any point in the trial and that the State did not indicate pre-trial

that it intended to use such 404(b) evidence.

Conversely, the State contends that Maggard made an enigmatic objection

that did not clearly and specifically apprise the court of the legal grounds for his complaint.

The State asserts that Maggard's objection was, at best, based on Rule 611(b)(2) of the

West Virginia Rules of Evidence[4] or Rule 401 of the West Virginia Rules of Evidence.[5]

---

[3] Rule 404(b) of the West Virginia Rules of Evidence provides that

> Evidence of other crimes, wrongs, or acts is not admissible to
> prove the character of a person in order to show that he or she
> acted in conformity therewith.  It may, however, be
> admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or
> absence of mistake or accident, provided that upon request by
> the accused, the prosecution in a criminal case shall provide
> reasonable notice in advance of trial, or during trial if the court
> excuses pretrial notice on good cause shown, of the general
> nature of any such evidence it intends to introduce at trial.

[4] Rule 611(b)(2) of the West Virginia Rules of Evidence provides,

> Non-Party Witnesses. Cross-examination should be limited to
> the subject matter of the direct examination and matters
> affecting the credibility of the non-party witness.  The court
> may, in the exercise of discretion, permit inquiry into
> additional matters as if on direct examination.

[5] Rule 401 of the West Virginia Rules of Evidence provides,

> "Relevant evidence" means evidence having any tendency to

The State also avers that J.C.'s answers were relevant to show that she would not have consented to sexual relations with defendant. Third, the State argues that because Maggard failed to raise a 404(b) objection, he waived the objection and the Court is precluded from reviewing defendant's 404(b) argument. *See State v. DeGraw*, 196 W.Va. 261, 272, 470 S.E.2d 215, 226 (1996).

Upon reviewing the trial transcript and the arguments of the parties, we conclude that the statements above constitute the precise type of character evidence that is specifically barred by Rule 404(a) of the West Virginia Rules of Evidence. The statements at issue do not reference specific instances of "other crimes, wrongs, or acts" as contemplated by Rule 404(b) of the West Virginia Rules of Evidence; rather, the statements seek to demonstrate Rule 404(a) evidence of Maggard's character, or a trait of his character, that is not admissible for the purpose of proving that he acted in conformity therewith on the night of the incident in this case. It is apparent from the record that the statements "heard how he is" and "how he was that he just wants to be with – he just wants to get one thing from girls" clearly insinuates that Maggard is a sexual predator.

In determining whether defense counsel adequately preserved an objection to the admission of these statements for the purposes of appellate review, we find that the

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

7

very nature of J.C.'s statement pertaining to Maggard's character makes the specific ground for defense counsel's objection sufficiently apparent from the context of the discussion had before the trial court. Rule 103 of the West Virginia Rules of Evidence states, in relevant part:

> (a) Effect of erroneous ruling.—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection.—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, *if the specific ground was not apparent from the context....*

J.C. was the first witness called by the State and at the time the State sought to elicit this testimony, defense counsel had not yet begun his cross-examination of J.C. Thus, the circuit court would not have perceived that a Rule 611(b)(2) objection was being made. Furthermore, we are not convinced that the objection was made on relevancy grounds. J.C.'s statements clearly attack Maggard's reputation and character as an alleged sexual predator. This type of evidence is obviously relevant to the facts at issue in this sexual assault case, but it is simply not admissible due to its inherently prejudicial nature under Rule 404(a). Our conclusion is also supported by the fact that the trial court never sought clarification from defense counsel asking what grounds the objection covered.

The trial in this case was conducted to determine whether Maggard was guilty of committing the two acts of sexual assault upon which he was indicted (digital and penile penetration) on September 27, 2008. Evidence of his character as a sexual predator was not admissible for the purpose of proving that he acted in conformity therewith on the night of September 27, 2008, and the admission of these statements could have prejudicially swayed the jury. At the time the objection was raised by defense counsel, the trial court did not attempt to clarify the grounds on which the objection was asserted and the prosecutor likewise did not respond. This leads us to conclude that the nature of the objection was apparent from the context and was sufficiently understood. [6]

---

[6] Even if this Court were to find the objection insufficient to preserve a 404(a) error, this Court has recognized that,

> [p]ursuant to W.Va.R.Evid. 103(d) we may address "plain errors affecting substantial rights although they were not brought to the attention of the court." We have noted in the past that the plain error "doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result." Syl. pt. 4, in relevant part, *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988). More recently, we held that in order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). We further explained in *Miller*, *supra*, that when determining whether the error is plain we look to see if the error is clear or obvious. *Id*. at 18, 459 S.E.2d at 129. If the error is clear or obvious, then it must affect substantial rights. In other words, it must be prejudicial, affecting the outcome of the case. *Id*.

Accordingly, we conclude that the circuit court erroneously admitted the alleged victim's above-referenced character statements and therefore, the case must be reversed and remanded for a new trial.[7]

## IV.

### CONCLUSION

For the above-stated reasons, we reverse the Petitioner's conviction of Count One of the indictment (digital penetration) and remand the case for further proceedings consistent with this Opinion.

Reversed and Remanded.

---

*Voelker v. Frederick Business Properties Co.*, 195 W. Va. 246, 465 S.E.2d 246 (1995). In this case, there can be no question that the error was clear and obvious, and it affected the substantial rights of Maggard, thus seriously affecting the fairness and integrity of the judicial proceedings in this case.

[7] To the extent that we reverse this matter on the first assignment of error presented, we will not discuss the Petitioner's remaining assignments of error.