536 S.E.2d 488

**STATE of West Virginia, Appellee,**

v.

**Orville Taft KITCHEN, III, Appellant.**

No. 27054.

Supreme Court of Appeals of
West Virginia.

Submitted June 6, 2000.

Decided July 12, 2000.

Darrell V. McGraw, Jr., Esq., Attorney General, Allen H. Loughry, II, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

Gregory L. Ayers, Esq., Assistant Public Defender, Charleston, West Virginia, Attorney for Appellant.

PER CURIAM:

Orville Taft Kitchen, III ("Kitchen"), appeals his conviction for aggravated robbery and kidnapping. By order dated March 16, 1999, the judge of the Circuit Court of Wayne County sentenced Kitchen to concurrent sentences of 60 years on each charge

following a trial by jury. Kitchen argues that the circuit court erred: (1) that the evidence presented below was insufficient to establish kidnapping; and (2) by failing to dismiss the kidnapping charge as being incidental to the aggravated robbery charge. Based upon our review of the record, the parties' arguments, and all matters submitted before this Court, we find that no error was committed by the court, and therefore, we affirm.

## I.

On the morning of October 15, 1997, Kitchen, his wife Angela, and her brother James left a bar in Huntington, West Virginia, and began to drive home in Wayne County on Route 75. Sometime during the trip, Kitchen and Angela began arguing and the argument escalated into a physical altercation. Angela demanded that her brother James, who was driving the vehicle, pull to the side of the road so that she could exit the vehicle. He did so. James later testified that he attempted to defend his sister as she was leaving the vehicle, but Kitchen then became violent with James.

After exiting the vehicle, Angela flagged down an oncoming automobile and excitedly told the driver "Get me out of here. He's trying to hurt me." The driver of the second car, a Mr. Wilson, was a resident of Ohio who was traveling on Route 75 through West Virginia on his way to work in Kentucky. After driving approximately 500 to 600 feet, Mr. Wilson inquired of Angela what had transpired and if she was injured. Angela informed him that she had just been in a fight with her husband and that she had left the vehicle in which she, her husband and her brother had been riding. Upon learning that he had just become a player in the middle of a domestic dispute, Wilson pulled off the road and asked Angela to please exit his vehicle because he had no desire to become involved in someone else's family quarrel. Angela exited the vehicle as requested and began walking down the road.

Apparently when Kitchen and James saw Angela enter Wilson's vehicle, they decided to chase the vehicle to convince Angela to return to their vehicle. Unfortunately, when Wilson was pulled over in order to allow Angela an opportunity to exit, Kitchen and James drove by and somehow did not see Angela exit the Wilson vehicle.

When Kitchen and James spotted Wilson's vehicle approach from behind, they slowed down and forced it to the side of the road and then blocked it. Kitchen approached Wilson at the driver's side window and asked him where Angela was. Wilson informed Kitchen that he had dropped Angela off on the side of the road not far from where he had picked her up. Kitchen did not believe Wilson, but did instruct James to go back to the spot where she allegedly had been dropped off. At trial Wilson testified that after James drove off, Kitchen began threatening Wilson's life. He further testified that Kitchen kept asking about his wife and telling Wilson that he was going to kill him.

According to Wilson, at one point he attempted to drive away, but Kitchen grabbed the steering wheel through the window and forced the car into a ditch, flattening the front tire. Kitchen does not dispute the fact that he stopped Wilson from driving away, but claims it was because he did not want to let him leave until Angela had been located.

Wilson testified that sometime thereafter James drove by with Angela and honked the horn at Kitchen. However, James testified that when he and Angela drove by the spot where he and Kitchen had stopped Wilson, he did not see anyone, so he and Angela simply returned home.

Wilson testified that after his escape had been foiled, but before James and Angela came by, Kitchen continued to threaten his life, telling him he had a shotgun in his vehicle and upon the return of James he was going to employ the weapon. The threats were followed by Kitchen punching Wilson in the mouth causing it to bleed. Wilson stated that he repeatedly asked Kitchen to allow him to leave, but his requests were met with scorn and additional threats.

Kitchen, according to Wilson, eventually reached into the vehicle, turned off the engine, and removed the keys. After removing the keys, Kitchen again punched Wilson in the mouth and repeated his threats. Kitchen

then asked Wilson if he possessed any alcohol or money. Wilson testified that he produced six one dollar bills which were stuffed into one of Kitchen's pocket.

After obtaining the money, Kitchen ordered Wilson into the trunk of the vehicle which Wilson refused to do. Subsequently, Kitchen instructed Wilson to move over into the passenger's side; he did so. Kitchen got into the driver's seat. Kitchen backed the vehicle out of the ditch, and began driving down the road toward McCoy Diesel, a facility that was located approximately a mile from where they had stopped.

When they reached McCoy Diesel, Wilson was able to jump out of the car. He testified that when he was jumping out of the car, Kitchen grabbed at him but that he was able to free himself of Kitchen's hold.

Wilson then ran to a security guard who was working at McCoy Diesel and requested that the guard take him to a telephone. The guard took him to a gas station where Wilson called the police. The guard testified that Wilson had a "busted" lip and that he had bled all over the side of his truck door.

A West Virginia State Police trooper was dispatched to pick up Wilson. The trooper testified that Wilson was very nervous and upset and that his "mouth was busted . . . [and that] both his upper and lower lips were bleeding." While questioning Wilson, the trooper received a phone call about a domestic dispute. A fellow trooper went to the site of the domestic dispute—the home of Kitchen and Angela. In approaching Kitchen's residence, the trooper noticed the Wilson vehicle nearby. The trooper later testified that the vehicle was abandoned, "just around the corner from [Kitchen's] residence." The trooper also testified that the right front tire was no longer on the rim and that the right quarter panel door and left quarter panel door were both damaged. Finally, the trooper testified that he found six one dollar bills in Kitchen's pocket.

In contrast to Wilson's testimony, Kitchen denied threatening Wilson's life, or taking any money from him, or taking his vehicle. Kitchen testified that he wanted to wait with Wilson until Angela was found. Kitchen did

admit that when Wilson tried to flee, he grabbed the wheel and forced the car into a ditch. Kitchen, however, stated that Wilson began punching him, and that he simply returned the punches. Kitchen testified that Wilson finally agreed that he would drive back to the site and look for Angela. However, when Kitchen walked behind the vehicle to enter on the passenger side, Wilson sped away leaving Kitchen alone. Kitchen testified that he then began walking along Route 75 toward home and was eventually picked up by a Mr. Adkins who drove him home. Adkins testified in court and corroborated Kitchen's statement.

Kitchen was charged with aggravated robbery and kidnapping. He was convicted by a jury on June 12, 1998, on both charges. By order dated March 16, 1999, the circuit court sentenced Kitchen to two 60-year concurrent sentences. This appeal followed.

## II.

### A.

■ In his appeal, Kitchen contends that the charge of kidnapping was not supported by sufficient evidence. Kitchen points out that the circuit court instructed the jury that to find Kitchen guilty of kidnapping they had to find beyond a reasonable doubt that he "did by force, threat and/or duress, take, confine and transport within West Virginia or otherwise kidnap, Herman Wilson, for the purpose of or with the intent of shielding or protecting the said Orville Taft Kitchen or for the purpose of evading capture or arrest[.]"

An examination of the record indicates that, in addition to the paragraph cited by the appellant, the circuit court also instructed the jury in language preceding the aforesaid language that:

Kidnapping is committed when any person by force, threat, duress, fraud or enticement, takes, confines, conceals, decoys, inveigles, entices away, transports into or out of West Virginia or within West Virginia, or otherwise kidnaps another person for the purpose or with the intent of taking, receiving, demanding or extorting from such person, any ransom, money or

other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime.

This instruction is generally from the kidnapping statute found in *W.Va.Code*, 61–2–14a. We find that this instruction is sufficient to properly instruct the jury on the crime of kidnapping.

■ In reviewing a challenge to the sufficiency of the evidence, we have established the following standards in Syllabus Points 1 and 3 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

1. The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

3. A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

We have stated that a defendant faces an "uphill climb" when he challenges the suffi-

ciency of the evidence and we will reverse "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. La-Rock*, 196 W.Va. 294, 303, 470 S.E.2d 613, 622 (1996).

■ Kitchen argues that he initially restrained Wilson in order to ascertain the whereabouts of Angela, that the injuries exhibited by Wilson were a result of both men grappling with each other after Kitchen grabbed the steering wheel, and that Wilson drove away after agreeing to take Kitchen to the place where Angela had been dropped off. Thus, Kitchen claims that he did not kidnap Wilson and that the State failed to present sufficient evidence to establish that the crime had taken place.

Conversely, the State argues that the evidence presented to the jury sufficiently established that Kitchen kidnaped Wilson. The State points out that Kitchen admits grabbing the steering wheel and wrecking the vehicle when he stopped Wilson in his first attempt to drive away. Kitchen also admits to punching Wilson, although his recitation of the facts surrounding the punches differs from that of Wilson. The State also presented the testimony of the security guard who testified that Wilson needed transportation to a gas station to report his car had been stolen. Finally, to refute the story that Wilson had driven away and left Kitchen to hitchhike home, the jury was informed that the Wilson vehicle was found just a short distance from Kitchen's residence.

Evidence was also presented that Kitchen stole money from Wilson, stole his vehicle, and when Wilson finally got away from Kitchen, he was not released, but escaped while Kitchen continued in his attempts to restrain Wilson.

Taking all the evidence in the light most favorable to the prosecution, as required by *Guthrie, supra*, we find that the evidence was sufficient to convince a reasonable person that Kitchen did in fact kidnap Wilson. Consequently, we find that Kitchen's claim that the evidence was insufficient to support

a guilty verdict of kidnapping is without merit.

### B.

The appellant also asserts that the circuit court erred in failing to dismiss the charge of kidnapping when the kidnapping was incidental to the charge of aggravated robbery. Kitchen argues that Wilson's very brief restraint was incidental to the commission of the aggravated robbery. In support of his argument, Kitchen relies upon *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985).

Syllabus Point 2 of *Miller* provides:

In interpreting and applying a generally worded kidnapping statute, such as W.Va. Code, 61–2–14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed. The general rule is that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kidnapping were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm.

In our discussion of kidnapping in *Miller*, we observed that under our general kidnapping statute the crime of kidnapping

... could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping and abduction. It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place.

It is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature

in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words.

*Miller*, 175 W.Va. at 619–620, 336 S.E.2d at 913–914 *quoting People v. Levy*, 15 N.Y.2d 159, 164, 204 N.E.2d 842, 844, 256 N.Y.S.2d 793, 796, *cert. denied*, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965).

The State contends that Kitchen was properly charged with kidnapping, and that the conviction should be affirmed. The State argues that Kitchen's restraint of Wilson was not necessary or incidental to the robbery of either Wilson's money or his vehicle.

*Miller* set forth four elements to be examined in order to ascertain whether or not kidnapping is incidental to another crime. Under *Miller*, we examine: (1) the length of time the victim was held or moved; (2) the distance the victim was forced to move; (3) the location and environment of the place the victim was detained; and (4) the exposure of the victim to an increased risk of harm.

A review of the record indicates that Wilson was restrained for a period of more than one-half hour during which time he attempted to escape two times and was successful on the second attempt. Wilson, who was not a resident of West Virginia but was simply traveling to his job in Kentucky, was forcibly restrained in his own vehicle, ordered to get into the trunk of his vehicle—which he refused, and was driven around aimlessly by Kitchen. And, Wilson was exposed to considerable harm by being driven around in his own stolen vehicle at approximately 4:30 in the morning by a drunken man who had beaten him, stolen from him, and threatened his life repeatedly. Most importantly, we note that Kitchen never released Wilson, rather, Wilson was forced to flee from his captor from a moving vehicle while Kitchen tried to again restrain him from leaving the vehicle.

From our review of this evidence, we find that the forceable restraint and transportation of Mr. Wilson were not incidental to the robbery of Mr. Wilson; therefore, the appellant was properly charged with kidnapping.

## III.

In conclusion, we find that the evidence was sufficient for the jury to find the appellant guilty of the crime of kidnapping, and that the circuit court committed no error in denying Kitchen's motion to dismiss the charge of kidnapping.

Affirmed.