# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 12-1460** (Kanawha County 11-F-755)

**Gary W. Mullins,**
**Defendant Below, Petitioner**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Gary W. Mullins, by counsel Matthew A. Victor, appeals the order of the Circuit Court of Kanawha County, entered November 29, 2012, sentencing him to a determinate term of twenty-five years in the penitentiary following his conviction of kidnapping. The State, by counsel Benjamin F. Yancey III, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

### FACTUAL AND PROCEDURAL HISTORY

In September of 2011, a grand jury indicted petitioner on kidnapping (Count I), second-degree robbery (Count II), and fraudulent scheme (Count III). Following a trial in February of 2012, a jury found petitioner guilty of kidnapping and acquitted petitioner of the charges of robbery and of fraudulent scheme. The trial court denied petitioner's motion for a new trial and/or judgment of acquittal because it was untimely filed. Petitioner appeals the final order entered November 29, 2012, sentencing him to a determinate sentence of twenty-five years in the penitentiary.

The State's evidence at trial showed that on January 11, 2011, petitioner kidnapped George Jacobs (the victim) at the Kroger's parking lot in Kanawha City, West Virginia. At the time of the kidnapping, the victim was eighty-four years old. Petitioner jumped into the passenger seat of the victim's car and demanded money. The victim responded that he only had enough money to purchase his groceries. Petitioner demanded that the victim give him $2,000. Petitioner grabbed the victim by the arm and instructed the victim to drive to his home to retrieve the money. The victim testified that he felt scared, threatened, and unable to leave his car.

After arriving at the victim's home, the victim handed petitioner $1,800. Not satisfied

1

with this amount, petitioner, in a threatening manner, demanded more money and the victim wrote a check for $200. Petitioner and the victim then drove to the victim's bank to cash the check at the drive-thru window. After cashing the check, the victim handed the additional $200 to petitioner.

After leaving the bank, the victim drove petitioner back to the Kroger's parking lot. Petitioner told the victim not to tell the police or his family what had occurred. Petitioner exited the victim's car, climbed into his truck, and drove away. Thereafter, the victim looked to see if there was a police officer inside of the grocery store, but he did not find an officer. Feeling ashamed about what had occurred, the victim did not report this incident immediately to the police or his family.

The events described above are relevant to petitioner's kidnapping conviction that is at issue in this appeal. The victim further testified that petitioner confronted him on at least three more occasions to demand money.[1] The record reflects that the victim was crying on the stand when he described his encounters with petitioner.[2]

## STANDARD OF REVIEW

Petitioner raises several grounds on appeal. Since the alleged errors concern different principles of law, the applicable standards of review will be incorporated into the discussion of

---

[1] Two days later, on January 13, 2011, petitioner was back at the victim's home, banging on the front door, demanding more money. Following this demand, the victim went to his bank where he used his credit card to obtain a $2,000 cash advance for petitioner. After receiving this cash, petitioner again told the victim not to tell the police what had occurred. The victim testified that he was afraid of petitioner.

Another incident occurred a little over a month later, on February 22, 2011, when petitioner returned to the victim's home for more money. Petitioner and the victim went to the victim's bank. The victim cashed a check for $450, and handed it to petitioner. During this incident, petitioner signed a promissory note, whereby petitioner was to repay the victim $4,600. However, petitioner never returned any money to the victim.

Following this incident, petitioner purchased a new truck. A few days after this purchase, on March 14, 2011, petitioner contacted the victim and told him that petitioner needed new tires for his truck. Petitioner and the victim went to Sears department store in Charleston, where the victim used his Sears credit card to buy tires for petitioner's truck. The tires cost $531. The victim testified that he felt "forced" to pay for the tires. On this same day, at petitioner's demand, the victim cashed another check at his bank for $500. Of this $500, petitioner took $300, leaving the victim with $200. The victim testified that he did not report these incidents immediately to the police or his family because he was afraid of petitioner. The victim stated that petitioner threatened to "fix" the victim "if something went wrong."

[2] We note that the victim died the day after he testified at petitioner's trial. The trial court did not inform the jury of the victim's death.

2

each issue. We note, however, that "'[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice.' Syllabus point 3, *State v. Sprigg,* 103 W.Va. 404, 137 S.E. 746 (1927)." Syl. Pt. 1, *State v. Easton,* 203 W.Va. 631, 510 S.E.2d 465 (1998).

## DISCUSSION

Petitioner claims that there was insufficient evidence to support his conviction of kidnapping under West Virginia Code § 61-2-14a, because there was no "stealth" in petitioner's approach. Petitioner argues that the victim agreed to take him to the victim's home and later to the bank. Therefore, petitioner argues that the elements of the crime were not satisfied.[3] We have held that

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 5, *State v. Broughton*, 196 W.Va. 281, 470 S.E.2d 413 (1996).

After reviewing the record, this Court finds that the evidence was sufficient to support petitioner's conviction of kidnapping, keeping in mind that for the purpose of this analysis, all the evidence must be viewed in the light most favorable to the prosecution. *Id.* The testimony of the elderly victim supports the finding that petitioner accomplished the kidnapping by restraining

---

[3]An examination of the record indicates that the trial court instructed the jury that:

> Kidnapping is committed when any person by force, threat, duress, fraud or enticement, takes, confines, conceals, decoys, inveigles, entices away, transports into or out of West Virginia, or within West Virginia, or otherwise kidnaps another person for the purpose or with the intent of taking, receiving, demanding or extorting from such person, any ransom, money or other thing, or any concession or advantage of any sort.

This instruction is generally adapted from the kidnapping statute found in West Virginia Code § 61-2-14a. This Court approved a similar jury instruction in *State v. Kitchen*, 207 W.Va. 724, 727-28, 536 S.E.2d 488, 491-92 (2000).

the victim through threats and intimidation considering the victim's age and vulnerability. The evidence also supports the finding that petitioner kidnapped the victim for the purpose of obtaining money. Consequently, we find that petitioner's claim that the evidence was insufficient to support a guilty verdict of kidnapping is without merit.

Petitioner also argues that he was prejudiced by the State's presentation of the case to the grand jury. On appeal, without having requested a dismissal of the indictment at the trial court level, petitioner requests this Court reverse his conviction on the basis that the indictment was invalid because a police detective made false statements to the grand jury that petitioner had a long criminal history of extorting money from the elderly. Petitioner admits that he has a lengthy record of arrests, but his only convictions involving theft include a 1985 grand larceny offense, two shoplifting offenses in 2004, a 2007 petit larceny offense, and a shoplifting offense in 2010. Petitioner maintains that his criminal record does not reveal any convictions for extorting money from the elderly, or any offense involving an elderly person.

This Court has long held that "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl., *Barker v. Fox,* 160 W.Va. 749, 238 S.E.2d 235 (1977). Furthermore, "[t]his Court reviews indictments only for constitutional error and prosecutorial misconduct." *State v. Adams,* 193 W.Va. 277, 284, 456 S.E.2d 4, 11 (1995). We find no merit to this assignment of error because petitioner has not alleged any constitutional error or prosecutorial misconduct.

Petitioner next asserts, under a plain error analysis, that the trial court erred by admitting hearsay evidence from a police detective regarding the victim's prior consistent nonverbal statements. Before calling the victim to the stand, the State presented the testimony of a detective who testified about the victim's demeanor when the victim discussed his encounters with petitioner. The detective testified that the victim was visibly distraught and emotional to the point of crying. Petitioner argues that the trial court committed plain error by allowing this testimony because a party may not bolster the credibility of his or her own witness before it has been attacked by the opposing party. *See* W.Va. Rule Evid. 608(a).

We note that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 3, *State v. Larry M.*, 215 W.Va. 358, 559 S.E.2d 781 (2004). The record reflects that the State asked the detective to describe the victim's demeanor when the victim talked about petitioner. At this point, petitioner's counsel objected on the grounds of relevance. The State countered that the detective's testimony was relevant, as it went to the victim's state of mind. The trial court permitted the detective to testify as to his personal observations of the victim, without further objection. At no time during this testimony did the detective state what the victim actually told him about his interactions with petitioner. We therefore hold that the trial court did not abuse its discretion by admitting this evidence because it was not offered to bolster the victim's credibility, but rather was probative on the issue of whether petitioner unlawfully restrained the victim. This Court finds that the evidence was relevant to an element of the crime and not unduly

4

prejudicial to petitioner.[4]

Petitioner also argues, under a plain error analysis, that the trial court erred by allowing the State to describe petitioner as "a con man" and/or "a con man who preys on the elderly" during opening statement and closing summation. In Syllabus Point 5 of *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995), we held that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." We find no clear error because petitioner was not unduly prejudiced by the State's comments and because no manifest injustice resulted as a result of the comments. *See also State v. Grubbs*, 178 W.Va. 811, 818, 364 S.E.2d 824, 832 (1987) ("the doctrine of plain error with regard to objectionable closing remarks is sparingly applied.").

Finally, petitioner claims that the cumulative effect of the alleged errors below resulted in an unfair trial requiring reversal of the conviction. We note that cumulative error can be found "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972). After review, this Court finds no legal or factual basis to support any of the alleged assignments of error.[5] Having failed to find numerous errors, we conclude that the cumulative error doctrine is not applicable.

For the foregoing reasons, we affirm.

Affirmed.

---

[4]Similarly, we find no merit in petitioner's argument that the trial court committed plain error by allowing the detective to testify that the victim's statement was consistent with the statement the victim gave to another police officer. The consistency of the statements was not offered by the State to bolster the victim's credibility, but rather was offered to explain why the police felt there was sufficient evidence to charge and arrest petitioner. Given the context of this testimony, we find that it did not seriously affect the fairness of the proceedings.

[5]Also without merit is petitioner's argument that he was excluded from a critical stage of the proceedings when there was communication between the trial court and the jury during jury deliberation. The jury sent a note asking what the victim did after petitioner left the grocery store parking lot. In response, the trial court sent a note back to the jury, which stated: "The jury must rely on your own memory and recollection of the evidence presented at trial, and consider the evidence in accordance with the instructions and law of this case." We find no indication from the record that petitioner was excluded from this discussion. Furthermore, even if the trial court violated petitioner's right to be present when it instructed the jury during deliberations, we find that petitioner was not prejudiced, and any error was harmless because the jury would not draw adverse inference from his absence, and there was no possibility that petitioner would have aided the trial court in instructing the jury. *State v. Crabtree,* 198 W.Va. 620, 629-30, 482 S.E.2d 605, 614-15 (1996).

**ISSUED:**  October 18, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II