No. 15-0931  - *State of West Virginia v. Leonard C. Lewis*

**FILED**
**March 9, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, J., concurring in part and dissenting in part:

In this appeal, the majority opinion affirmed the defendant's conviction and sentence for kidnapping, attempted first degree murder, malicious assault, domestic assault, and domestic battery. In view of the horrendous beating the victim sustained in this case, I believe the evidence was sufficient beyond a reasonable doubt for the jury to convict the defendant of attempted first degree murder, malicious assault, domestic assault, and domestic battery. Therefore, I concur with the majority opinion on those convictions. However, in my review of the facts in this case, I could not find a scintilla of evidence to support the conviction for kidnapping. Therefore, I dissent from the majority decision to sustain the kidnapping conviction.

It is important to understand that the most severe sentence the defendant received was for the kidnapping conviction. Based upon that conviction, the defendant was sentenced to life in prison without the possibility of parole. This is a grave sentence. It is this state's equivalent of capital punishment. In spite of the harshness of this sentence, a careful review of the majority opinion reveals that it provided only one paragraph that purported to analyze the trial evidence as it relates to the law involving kidnapping. This

1

terse treatment for such a severe punishment is unfortunate. It is unfortunate because even a cursory review of the record would have shown that the State failed to prove beyond a reasonable doubt that the defendant kidnapped the victim within the meaning of our law.

The initial analysis of the conviction for kidnapping must begin with the charge given to the jury by the trial judge. The trial judge instructed the jury that in order to find the defendant guilty of kidnapping, it had to find the following[1]:

---

[1]The circuit court instructed the jury on the elements of the kidnapping statute, W. Va. Code § 61-2-14a (1999) (Repl. Vol. 2010), as it existed when the beating was committed. At that time the statute provided:

> (a) Any person who, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this state or within this state, or otherwise kidnap any other person, or hold hostage any other person for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself, herself or others from bodily harm or of evading capture or arrest after he or she or they have committed a crime shall be guilty of a felony . . . . [.]

The statute was amended in 2012 to be more precise in its requirements. The current version of the statute now provides in relevant part:

> (a) Any person who unlawfully restrains another person with the intent:
>
> (1) To hold another person for ransom, reward, or concession;
>
> (2) To transport another person with the intent to inflict bodily injury or to terrorize the victim or another person; or
>
> (3) To use another person as a shield or hostage, shall be guilty of a

1. The Defendant, Leonard C. Lewis,

2. on the 16th day of November, 2011,

3. in Berkeley County, West Virginia;

4. did intentionally and feloniously

5. by the use of force, threat, duress, fraud, or enticement,

6. take, confine, conceal, decoy, inveigle, entice away or otherwise kidnap or hold hostage Sylvia L. Lewis (Thomas),

7. for the purpose of or with the intent of taking, receiving, demanding, or extorting, from Sylvia L. Lewis (Thomas)

8. any other thing, any concession or advantage of any sort, or

9. for the purpose or with intent of evading capture or arrest after he had committed Malicious Assault.

It is well settled that "[i]n order to secure a conviction the State must prove each and every element of the crime charged beyond a reasonable doubt." Syl. pt. 3, *State v. Knight*, 168 W. Va. 615, 285 S.E.2d 401 (1981). Applying the facts of this case to the elements of kidnapping, as provided to the jury by the trial judge, demonstrates that the State failed to carry its burden.

---

felony and, upon conviction, shall be punished by confinement by the division of corrections for life, and, notwithstanding the provisions of article twelve, chapter sixty-two of this code, shall not be eligible for parole.

W. Va. Code § 61-2-14a (2012) (Repl. Vol. 2014).

To begin, the victim testified that she was married to the defendant at the time of the assault, but that they were separated.[2] Even though they were separated, the victim testified that she periodically allowed the defendant to spend the night in her apartment.[3] When the defendant was allowed to stay at the apartment, he would sleep on a reclining chair in the livingroom. The victim worked at a VA medical center as a mental health technician. On the evening that the defendant assaulted the victim, the defendant was permitted to spend the day in the victim's apartment. The victim testified that, when she came home from work, shortly after midnight, the defendant was in her apartment.[4] Upon arriving home, the victim said a few words to the defendant and then went to bed.

The victim woke up in the middle of the night to use the bathroom. She testified that, when she came out of the bathroom, the defendant was standing in the hallway. The defendant attempted to touch the victim in a sexual way, but she rebuffed him and went into her bedroom. The victim heard the defendant say something and came back into the hallway. At that point, the defendant had quickly retrieved a knife from the kitchen. When the victim came into the hallway a second time, the defendant began stabbing and beating

---

[2]They were married in September of 2006. The victim was in her mid-fifties when the attack occurred.

[3]According to the victim, the defendant was homeless and lived in hotels and with friends. The victim also provided testimony to suggest that the defendant had mental health issues and was taking prescribed medications to control them.

[4]The victim testified that she was working the 3:30 to midnight shift.

her.[5] The victim testified as to her movement in the apartment once the attack started as follows:

> [**Victim**]. I tried to go towards the door. I'm screaming bloody murder. I'm trying to get towards this door.
>
> He grabs me. He grabs me by my hair, and he pulls me, and then he got on me. . . .
>
> . . . .
>
> I tried to get up and run. This man grabbed my hair again and he took the whole top part of my hair out. I mean, my hair was gone. . . .
>
> . . . .
>
> I pleaded with him. He glared at me, pulled my hair out. He was trying to coax me in the bathroom, and I was screaming, and I was screaming, and I was screaming, and then it's like I couldn't scream any more. All I know is I couldn't scream, and then when I could scream again I'm put in the bathtub.
>
> [**Prosecutor**]. So at this point the attack had moved into the bathroom?
>
> [**Victim**]. Yes. It's a very small apartment. . . .
>
> [**Prosecutor**]. And getting back to my question then, did you ask for him to let you go and take you to the hospital?
>
> [**Victim**]. Yes, I did. Yes, I did. I . . . he kept trying to get me in the bathroom. . . . I said "Leonard", I said, "please let me lay down.

---

[5]The victim testified that the attack may have been motivated by the defendant's belief that she was seeing another man.

|              |                                                                                 |
| ------------ | ------------------------------------------------------------------------------- |
|              | Just let me lay down. Just let me lay down.  Take me to my bed. Take me to my bed. . . ." |
| [**Prosecutor**]. | Did he let you go at that point?                                            |
| [**Victim**]. | No, he didn't let me go, but he did lay me in my bed for some reason. . . .     |
|              | . . . .                                                                         |
| [**Prosecutor**]. | Well, at what point . . . did you ever decide or form any kind of plan to try to get out of there? |
| [**Victim**]. | . . .  You know, I said "I need to go to the hospital".  I said "just take me to the VA Hospital. . . ." |
|              | . . . .                                                                         |
| [**Prosecutor**]. | When you suggested the VA Hospital in Washington, DC what was his response? |
| [**Victim**]. | Okay. . . .                                                                     |
| [**Prosecutor**]. | Okay.  So he took you out of the apartment at that point, and you said he put you in the truck? |
| [**Victim**]. | Yes, he put me in the vehicle.                                                  |
|              | . . . .                                                                         |
| [**Prosecutor**]. | He drove you to the hospital at that point?                                |
| [**Victim**] | We did go to the hospital.                                                       |

The majority opinion concluded that this "evidence was sufficient to support the kidnapping verdict."  However, as outlined above, the victim's testimony clearly showed that she was not kidnapped within the meaning of the statutory instruction given to the jury.

6

The trial judge instructed the jury, in essence, that it had to find that the defendant used force in order to "take, confine, conceal, decoy, inveigle, entice away or otherwise kidnap or hold hostage" the victim for the purpose of "taking, receiving, demanding, or extorting" from her any concession or advantage for the purpose evading capture or arrest after his assault.

To begin, for the purpose of the kidnapping statute, there was no evidence that the victim in this case was taken, confined or concealed.[6] The evidence showed that the victim came home from work and that the defendant was lawfully in her apartment when she arrived. The defendant attacked the victim in her apartment after she rebuffed his sexual advance. The victim's testimony was that the defendant believed she was seeing another man and therefore he wanted to kill her. The victim testified that the defendant said "I'm going to kill you." I have found no case law which holds that attempting to kill a victim in the victim's home without more, is considered taking, confinement, or concealment for the purpose of sustaining a kidnapping conviction. The initial refusal by the defendant to allow the victim to receive medical attention was because he wanted her to die, it was that simple.

---

[6]As I point out later, the defendant's conduct constituted unlawful restraint under W. Va. Code § 61-2-14g (2011) (Repl. Vol. 2014).

Next, there was no evidence that the defendant "decoyed, inveigled, enticed away or otherwise kidnapped" the victim. This element is the transportation or asportation element of the offense. In this case, the only evidence of the victim being transported was the defendant taking her to a hospital. The victim's testimony showed that this transportation was not for the purpose of evading capture or arrest–it was for the purpose of getting her medical treatment. The only other evidence of movement by the victim was her testimony that the defendant tried to "coax" her into the bathroom, and that the defendant took her to her bedroom after she made the request. This movement was insufficient as a matter of law to constitute decoying, inveigling, enticing away or otherwise kidnapping. I have found no case law which holds that "coaxing" a victim into a bathroom, or complying with a victim's request to take her to her bedroom, constituted transportation for the purpose of sustaining a kidnapping conviction. In *State v. Davis*, 180 W. Va. 357, 376 S.E.2d 563 (1988) we addressed the issue of the movement of a sexual assault victim into a bedroom in the context of a conviction under our statute for abduction with intent to defile. We found such movement to be insufficient to show abduction. *See also State v. Weaver*, 181 W. Va. 274, 279, 382 S.E.2d 327, 332 (1989) ("[A] defendant cannot be convicted of abduction . . ., if the movement or detention of the victim is merely incidental to the commission of another crime."); Syl. pt. 3, in part, *State v. Brumfield*, 178 W. Va. 240, 358 S.E.2d 801 (1987) ("Where an inmate, by force, has unlawfully confined a correctional officer for a minimal period of time within the walls of a correctional facility in order to facilitate his escape, and

8

movement of that officer was slight and did not result in exposure to an increased risk of harm, a conviction for the offense of kidnapping pursuant to W. Va. Code, 61-2-14a [1965] will be reversed . . . .").

Further, the jury was instructed that a conviction for kidnapping could be found if there was evidence the victim was being held as a hostage. In this case, there was no evidence that the victim was used as a hostage.

Finally, the jury was instructed that they had to find that the defendant took, received, demanded, or extorted from the victim a concession or advantage. We have previously noted "that the plain language of the words 'advantage' and 'concession,' as set forth in the [kidnapping] statute, should be afforded their plain meaning, and therefore must be construed to mean 'unlawful' advantage and 'unlawful' concession." *Slater v. Ballard*, No. 12-0330, 2013 WL 5418574, at *11 (W. Va. Sept. 27, 2013) (memorandum decision). *See also State v. Hanna*, 180 W. Va. 598, 605, 378 S.E.2d 640, 647 (1989) ("The specific intent necessary to the offense of kidnapping as charged in the indictment is the intent to demand 'any concession or advantage of any sort.' Although a sexual purpose or motivation has been held to satisfy kidnapping statutes requiring such an intent, the intent to demand a concession or advantage has a much broader meaning and may encompass other benefits or purposes as well." (internal citations omitted)). The evidence in this case did not show that

9

the defendant obtained an unlawful concession or advantage from the victim. Rather, the

defendant maliciously beat and stabbed the victim with the intent of killing her. For reasons

the victim could not explain, once the defendant realized that she had not died as a result of

his savage beating, he decided against killing her and agreed to take her to a hospital. The

defendant did not receive, demand, or extort from the victim any unlawful concession or

advantage in order to keep her alive.

The majority opinion completely failed to provide any analysis of the facts of

this case in the light of the elements of our kidnapping statute or the jury instructions given.

Instead, the majority opinion decided to *assume* that the elements for kidnapping were

proven, and therefore looked to see if the kidnapping was incidental to other crimes

committed by the defendant. The majority opinion purported to rely on Syllabus point 2 of

*State v. Miller*, 175 W. Va. 616, 336 S.E.2d 910 (1985), for this analysis. The problem with

the majority opinion's reliance on Syllabus point 2 of *Miller*, is that this Syllabus point

applies only when there has been a determination that all the elements of our kidnapping

statute have been proven. It is stated clearly in syllabus point 2 of *Miller* that its principle

of law only applies when "deciding whether the *acts that technically constitute kidnapping*

were incidental to another crime[.]" (Emphasis added.) *See also State v. Kitchen*, 207 W.

Va. 724, 536 S.E.2d 488 (2000) (determining through an analysis of the evidence that a

kidnapping occurred within the meaning of the statute, and then proceeding to apply *Miller*

to determine if the kidnapping was incidental to the underlying crime). Based upon the victim's own testimony, it is evident that the elements of our kidnapping statute were not satisfied.

Moreover, *Miller* cautioned against doing exactly what the majority opinion did in this case. In discussing *Miller* in *Kitchen* we noted the following:

> In our discussion of kidnapping in *Miller*, we observed that under our general kidnapping statute the crime of kidnapping
>
> . . . could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping and abduction. It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place.
>
> It is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words. *Miller*, 175 W. Va. at 619-620, 336 S.E.2d at 913-914 *quoting People v. Levy*, 15 N.Y.2d 159, 164, 204 N.E.2d 842, 844, 256 N.Y.S.2d 793, 796, *cert. denied*, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965).

*Kitchen*, 207 W. Va. at 729, 536 S.E.2d at 493. In other words, even if I assumed, for the sake of argument, that a technical kidnapping has been shown, under *Miller* the slight coaxed

movement into the bathroom was incidental to the defendant's attempt to murder the victim—not kidnap the victim.

In the final analysis, the majority opinion should have analyzed the elements of our kidnapping statute, as outlined in the jury instruction, with the facts of the case as testified to by the victim. Such an analysis would have shown that the State failed to carry its burden of proving beyond a reasonable doubt that the defendant kidnapped the victim. There was no need to rely on syllabus point 2 of *Miller*.

In view of my analysis applying the law of kidnapping to the facts of this case, I believe the defendant's federal constitutional right to due process was violated, because "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Finally, I must address the crime for which the defendant should have been convicted. The trial court instructed the jury on the offense of unlawful restraint.[7] I believe

---

[7]The unlawful restraint offense is set out under W. Va. Code § 61-2-14g(a) (2011), in relevant part, as follows

(a) Any person who, without legal authority intentionally restrains another with the intent that the other person not be allowed to leave the place of restraint

12

the evidence was sufficient to find the defendant guilty beyond a reasonable doubt of unlawful restraint—not kidnapping. The jury rejected the evidence establishing this offense and chose instead to convict the defendant of kidnapping. The jury's decision to convict the defendant of an offense for which there was no evidence cannot stand simply because the jury made the decision. It is the duty of this Court to correct the errors of a jury, not to rubber stamp a verdict that is clearly the result of passion and prejudice. *See* Syl. pt. 1, *State v. Easton*, 203 W. Va. 631, 510 S.E.2d 465 (1998) ("A reviewing court should not reverse a criminal case on the facts which have been passed upon the jury, unless the court can say that there is no reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice.").

It is clear to me, from reading the testimony of the victim, that the jury was appalled by the brutal way in which the defendant beat the victim. There can be no doubt that the viciousness of the beating created a strong passion and prejudice in the jury that caused it to convict the defendant of an offense that would send him to prison for the rest of his life, rather than convict him of the misdemeanor offense for which he was actually guilty. As pointed out by the dissent in *State v. Davis*, No. 11-1775, 2013 WL 1501435 (W. Va.

---

and who does so by physical force or by overt or implied threat of violence or by actual physical restraint but without the intent to obtain any other concession or advantage as those terms are used in section fourteen-a of this article is guilty of a misdemeanor[.]

Apr. 12, 2013) (memorandum decision), "I believe the judge should have applied [W. Va. Code § 61-2-14g] and given the defendant additional punishment for unlawful restraint rather than sentencing the defendant to life imprisonment for kidnapping." *Id.* at*4 (Ketchum, J., dissenting).

For the reasons set out, I concur in part and dissent in part.