# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 16-0172** (Fayette County 15-F-60)

**Thomas G. Carter, Jr.,**
**Defendant Below, Petitioner**

**FILED**

**June 9, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Thomas G. Carter, Jr., by counsel E. Scott Stanton, appeals his December 2, 2015, conviction on charges of sexual abuse in the first degree, sexual assault in the first degree, robbery in the first degree, and kidnapping. Respondent State of West Virginia, by counsel Zachary Aaron Viglianco, filed a summary response in support of the circuit court's order. Petitioner argues that the circuit court erred in allowing the admission of certain photographs at trial and in denying his motions for a judgment of acquittal as to the robbery and kidnapping charges against him.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21(d) of the Rules of Appellate Procedure.

At approximately 4:30 p.m. on June 14, 2014, a young adult female ("victim") left her residence and went for a run on the "Rails to Trails" walking path in Oak Hill, Fayette County. While running on the trail, she traveled through a heavily wooded area adjacent to a mobile home park. As she passed the mobile home park, she noticed a man on a riding lawnmower wearing a flannel shirt. She continued to the end of the trail, turned around, and started back in the direction of her home. As she neared the mobile home park, she was attacked by an individual wearing a facemask, gloves, and a flannel shirt. A struggle ensued and the victim was pulled off the trail, over a hill, and into the woods. The victim attempted to use her cell phone to call for help, but her attacker jerked the phone from her hands.[1]

During the assault, the victim continued to fight and, at some point, removed her attacker's mask. Thereafter, her attacker advised, "I can't let you go. I'm not doing [fifteen] to [eighteen] years because of you, and you've seen my face. I'm not doing it." The victim

---

[1] The victim testified that she did not see the phone again after it was jerked from her hand. The phone was never located.

responded "[w]ell, then you are going to [have to] kill me," to which the attacker responded, "I will kill you. I will kill you right now. If you don't do what I say, I'm going to kill you."

Ultimately, the victim was directed to lay down and restraints, both tape and rope, were used to tie each of her legs to different trees. The victim's hands were tied behind her head and secured to a tree behind her, and she was gagged.[2] As she was being restrained, the attacker removed the victim's shorts and underwear and used a knife to cut off her shirt and bra. The attacker began "kissing and licking" the victim's breasts, her abdomen, and her legs. The attacker performed oral sex upon the victim, with his tongue making contact with her sex organ. Sometime thereafter, the attacker left to clean up the disarray created by the initial struggle. However, before leaving, he tied the victim's shirt and bra around her head and left her bound and gagged. The attacker told the victim that, when he returned, he would take her to a different location.

When her attacker left, the victim managed to loosen the ropes around one of her legs and, was ultimately able to free herself from all restraints. Once free, the victim, now completely naked, went "several hundred yards" through a thicket of briars to a nearby home for help. The homeowner called police and emergency medical personnel. The victim provided a detailed description of her attacker to police and, subsequently, identified petitioner as her attacker. In addition to describing his physical appearance, the victim described petitioner's flannel shirt and described a red pack of cigarettes she observed during the attack, which were later discovered on petitioner's person. The victim's shirt, shorts, and underwear were discovered near the maintenance building of the mobile home park where petitioner worked.

The same evening as the attack, petitioner was found hiding under the deck of one of the mobile home park's residences and he was arrested. The shirt petitioner was wearing at the time of his arrest was stained with the victim's blood. Fluid samples collected from the victim's body following the attack contained male DNA, consistent with petitioner's DNA profile. On September 9, 2014, the petitioner was indicted by the Fayette County Grand Jury on four charges: robbery, kidnapping, first degree sexual assault, and first degree sexual abuse. A superseding indictment was returned on May 12, 2015.

A bifurcated three-day jury trial commenced on August 6, 2015, and, after deliberating for one hour, the jury found petitioner guilty on all four charges. The mercy phase of the trial then began and, after hearing testimony, the jury returned a recommendation of no mercy with respect to the kidnapping charge. On December 2, 2015, petitioner was sentenced to one to five years for sexual abuse in the first degree; fifteen to thirty-five years for sexual assault in the first degree; a determinate sentence of fifty years for robbery in the first degree; and the remainder of his life for kidnapping. Petitioner filed a motion to reduce sentence, which was denied by the circuit court on January 20, 2016. It is from his December 2, 2015, conviction that petitioner now appeals.

---

[2] At trial, the victim testified that she felt as if her body "was going to snap in two."

2

On appeal, petitioner asserts three assignments of error. In his first and second assignments of error, petitioner alleges that the circuit court erred in failing to grant his motion for a judgment of acquittal concerning the offenses of robbery and kidnapping, based upon the State's failure to present evidence sufficient to sustain petitioner's convictions as to these offenses. In his third assignment of error, petitioner argues that the circuit court erred in allowing post-attack photographs of the victim's injuries to be admitted at trial.

This Court applies a "de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011). When discussing a motion for acquittal, we have previously noted that

> [t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996).

With regard to examinations as to the sufficiency of evidence, we have long held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

We have further held that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl Pt. 3, *id.*

As to a trial court's rulings on the admission of improper evidence, we have found that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). *Accord* Syl. Pt. 5, *State v. Gibbs*, 239 W. Va. 646, 797 S.E.2d 623 (2017). With these principles in mind, we now address petitioner's assignments of error.

With respect to petitioner's first and second assignments of error, we find that they are without merit. Here, the record is replete with evidence to sustain petitioner convictions. At trial, in an effort to establish that petitioner was guilty of robbery in the first degree, the State argued that petitioner took the victim's property, her phone, by brute force in an attempt to permanently deprive her of it. In his appellate brief, petitioner argues that he took the victim's phone simply to keep her from calling the police and did not intend to permanently deprive her of her property. As such, petitioner contends that he cannot be guilty of the offense of robbery. However, petitioner's assertion on appeal is contrary to statements he made to the victim during the attack.

At trial, the victim testified that petitioner told her that because she had seen his face and could identify him, he had no choice but to kill her, as he did not want to go to jail. If petitioner had returned the victim's phone, as he implies was his intent, she would have contacted police, as she was trying to do when her phone was taken, and petitioner would have been discovered. Thus, it is clear that petitioner intended to permanently deprive the victim of her property. Accordingly, as the evidence offered at trial was sufficient for the jury to convict petitioner of robbery in the first degree, the circuit court did not err in denying petitioner's motion for judgment of acquittal as to his robbery charge.

In his second assignment of error, petitioner argues that there was insufficient evidence offered at trial to establish that petitioner's kidnapping of the victim was not just incidental to his sexual assault and abuse of her, and, thus, did not constitute a separate crime. We disagree. Like petitioner's robbery conviction, the record herein is replete with evidence to sustain petitioner's kidnapping conviction. It is undisputed that petitioner attacked the victim, restrained her, and forcibly moved her to an isolated area, where, after sexually assaulting her, petitioner left her with the promise to return later. Thus, like the victim in *State v. Miller*, 175 W. Va. 616, 336 S.E.2d 910 (1985), and *State v. Kitchen*, 207 W. Va. 724, 536 S.E.2d 488 (2000), the kidnapping of the victim herein was not incidental to the sexual assault perpetrated upon her, but was a separate and distinct crime. Accordingly, the circuit court did not err in denying petitioner's motion for judgment of acquittal as to the kidnapping charge.

In his final assignment of error, petitioner contends that the circuit court erred in permitting the admission of photographs of the victim's injuries at trial. Petitioner argues that the admission of these photographs was unnecessarily cumulative, as several trial witnesses testified regarding petitioner's injuries, and the photographs were simply an attempt to elicit sympathy for the victim. However, it is undisputed that petitioner's trial counsel made no objection to the admission of the photographs at trial. Thus, on appeal, we must review the propriety of the

4

circuit court's ruling in allowing the photographs to be introduced for plain error.[3] "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Based upon our review of the record herein, we find no merit to petitioner's claims that the trial court committed plain error in permitting the admission of the post-attack photographs showing the victim's injuries. The subject photographs do not show the victim's face and clearly display some of the physical injuries she sustained as a result of the attack. As such, the photographs were relevant and probative to the jury's determination of petitioner's guilt as to the robbery and kidnapping charges, as they are indicative of the force by which the victim was attacked, and the manner in which she was restrained. Accordingly, the circuit court did not commit plain error in permitting the introduction of the photographs as trial exhibits.

For the foregoing reasons, we affirm petitioner's December 2, 2015, convictions.

Affirmed.

**ISSUED:** June 9, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[3] *See* Syl. Pt. 1, *State v. Marple*, 197 W. Va. 47, 475 S.E.2d 47 (1996).